**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FABIAN POURRAIN**,

    Plaintiff,

v.       Case No.: 6:25-cv-02233-AGM-LHP

**DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, SECRETARY, U.S. DEPARTMENT HOMELAND SECURITY**,

    Defendants,

## ORDER

Fabian Pourrain, a non-citizen[1], filed a petition for asylum in either 2015 or 2016.[2] Though he alleges that he received notice that his petition was received, in the years that followed he was not interviewed, no evidence has been requested from him, he has been provided no notice of action, and no one has explained the delay.

Mr. Pourrain now petitions this Court for a writ of mandamus compelling Defendant United States Citizenship and Immigration Services ("**USCIS**") to adjudicate his asylum claim. He also names Defendant United States Department of Homeland Security ("**DHS**"), alleging that DHS oversees USCIS and "is responsible for ensuring the timely adjudication of immigration benefits." Neither Defendant has been served to date.

---

[1] Mr. Pourrain's petition for mandamus contains no information about his home country or the circumstances that led him to petition for asylum in the United States.

[2] In the introductory portion of his petition, Mr. Pourrain alleges that he petitioned for asylum in February 2016. In paragraph 3, he alleges that he filed his Form I-589 in February 2015. In paragraph 6, he alleges that "Petitioner filed his asylum application on [exact date][sic] of February 2015."

In Count I, Mr. Pourrain petitions for a writ of mandamus pursuant to 28 U.S.C. § 1361. He requests that this Court (1) issue a writ compelling USCIS to adjudicate his asylum application within 60 days; (2) compel USCIS to provide a status report every 30 days until completion; and (3) declare that USCIS's delay is unreasonable and unlawful.

In Counts II and III, he seeks monetary damages. Count II alleges that he is entitled to an award of damages and equitable relief under the Administrative Procedure Act ("**APA**"). Count III demands damages and equitable relief under the Due Process Clause of the Fifth Amendment because "[a]sylum applicants have a constitutionally protected interest in timely adjudication."

Mr. Pourrain contends that, "even under the backlog," the average processing time for asylum cases is "significantly shorter" than he has experienced. He has made "repeated" inquiries but "USCIS responses have been generic, automated, or non-substantive."

According to Mr. Pourrain, USCIS's prolonged inaction on his petition for asylum has led to: (1) lost jobs and promotions due to Mr. Pourrain's lack of permanent status; (2) an inability to "access business opportunities"; (3) anxiety and depression; (4) an inability "to reunify with family abroad or stabilize [his] household"; (5) "[b]arriers to international travel, education, [and] long-term planning"; and (6) "[h]arm [that] cannot be remedied with monetary compensation alone."

## I.     Legal Standard

### A. Subject Matter Jurisdiction

Even where, as here, a concern about subject matter jurisdiction has not yet been raised by a party, the law obligates the Court to consider its power to adjudicate. Unlike other

jurisdictional defenses that are waived unless timely raised, the lack of subject matter jurisdiction is a non-waivable defect. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("'[The lack of] subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). It can be raised at literally any point in the case, even after full adjudication of the claim and, for this reason, courts are duty-bound to raise the issue *sua sponte* when their power is reasonably in question. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.").

The burden of establishing the existence of subject matter jurisdiction is on the party seeking to invoke jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[I]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Concerns about the existence of subject matter jurisdiction can arise either because the allegations of the complaint are insufficient to establish jurisdiction (a facial challenge), or because a party challenges the veracity of those allegations (a factual challenge). *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). When the challenge is facial, the question is whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.*; *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

## B. Mandamus

Article III of the United States Constitution provides for a federal judicial branch and grants to Congress the power to establish lower federal courts and determine the jurisdiction of those courts. In Title 28 of the United States Code, Congress created United States district courts. In 28 U.S.C. § 1331, Congress conferred jurisdiction to United States district courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." In 28 U.S.C. § 1332, Congress conferred jurisdiction on these courts to hear most other types of cases, so long as they meet the diversity of citizenship and amount in controversy requirements. Importantly here, in the Mandamus Act, 28 U.S.C. § 1361, Congress also conferred on United States district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The founders of the United States understood that tyranny flows from the consolidation of governmental power within a single branch, and, perhaps in recognition of this, controlling precedent is clear that the Mandamus Act does not confer upon the judicial branch the power to second-guess policy judgments or discretionary internal operations of the legislative or executive branches. The text of 28 U.S.C. § 1361 has been interpreted to require a trial court to satisfy itself that (1) the plaintiff clearly has a right to the relief being sought; (2) the defendant clearly has a duty to act; and (3) there is no other adequate remedy available. *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003); *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011).

Before concluding that it has subject matter jurisdiction to issue a writ of mandamus, the Court must determine that each of these requirements are met. *See United States v. Salmona*, 810 F.3d 806, 811 (11th Cir. 2016) ("[T]he test for mandamus jurisdiction is 'whether mandamus would be an appropriate means of relief.'") (quoting *Cash*, 327 F.3d at 1258). Ultimately, the remedy of mandamus is "drastic" and "to be invoked only in extraordinary situations." *Kerr v. U. S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976).

## II.     Analysis

In Count I of the petition, Mr. Pourrain seeks a writ of mandamus under 28 U.S.C. § 1361, alleging that USCIS has a clear, non-discretionary duty to adjudicate asylum claims and he has a clear right to adjudication within a reasonable time. He contends that "[n]ine years with no action is per se unreasonable." (Doc. # 1 at 2). In Count II of the petition, he alleges that Congress granted, through the APA, federal courts jurisdiction to compel agency action when it is "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. In Count III, Mr. Pourrain asserts the Due Process Clause of the Fifth Amendment entitles him to relief.

### A.     Mandamus

#### 1.  The Petition Fails to Identify a Non-Discretionary Duty

Construing his petition liberally considering Mr. Pourrain's *pro se* status, Counts I and II essentially demand the issuance of a writ of mandamus that would direct USCIS to speed up its decision-making process on Mr. Pourrain's application for asylum. Yet, in Count I Mr. Pourrain does not identify which statute he contends creates a non-discretionary deadline or timeframe within which USCIS must act on his petition.

5

Perhaps Mr. Pourrain would contend that 8 U.S.C. § 1158(d)(5)(A) is the source of such a deadline, but his petition does not say so. If this is his contention, 8 U.S.C. § 1158(d)(5)(A)(ii) provides that "*in the absence of exceptional circumstances*, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." Considering the definition of the word "exceptional," Congress's choice of the word in this context implies that the executive branch would necessarily exercise a degree of discretion in identifying both a norm and a deviation from a norm. *See, e.g.*, *Exceptional*, The American Heritage College Dictionary (3d ed. 1993) ("[b]eing an exception; uncommon"); *Exceptional*, Ballentine's Law Dictionary (3d ed. 1969) ("[t]he rare—the unusual or extraordinary case or circumstance"); *Exceptional Circumstances*, Black's Law Dictionary (5th ed. 1979) ("[c]onditions which are out of the ordinary course of events; unusual or extraordinary circumstances."). If Mr. Pourrain contends that this statute is the source of the Defendants' non-discretionary duty to him, then he must explain what he believes to be the meaning of "in the absence of exceptional circumstances."

### 2. The Petition Fails to Identify a Duty Owed *to the Petitioner*

If Mr. Pourrain contains that this Court's mandamus jurisdiction is predicated on a statutory duty created by 8 U.S.C. § 1158, then that does not end the inquiry. Entitlement to, and a court's subject matter jurisdiction to issue, a writ of mandamus requires that the petitioner establish that a duty is owed specifically *to the petitioner*. And in the Immigration and Nationality Act ("**INA**"), Congress explicitly provided that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C.

6

§ 1158(d)(7). If it is Mr. Pourrain's contention that the Defendants owe a duty to him, then he must explain the source of that duty, given that Congress has explicitly stated that this portion of the INA confers no substantive or procedural right or benefit that is legally enforceable by Mr. Pourrain. *See also, e.g.*, *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (discussing the due process rights associated with aliens seeking admission into the United States and recognizing that "[t]he power to admit or exclude aliens is a sovereign prerogative").

### 3. The Petition Fails to Allege Sufficient Facts for the Court to Evaluate the Exhaustion Requirement

Mr. Pourrain also fails to allege compliance with the mandamus exhaustion requirement. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (finding section 1361 allows relief only where a plaintiff "has exhausted all other avenues of relief"). His allegation in the petition that he "has no other legal remedy to force USCIS to act" is a legal conclusion that does not, on its own, satisfy the Court that the mandamus requirements are met, such that the Court could determine that it has subject matter jurisdiction. Because the test for mandamus jurisdiction is whether mandamus relief is appropriate, *see Salmona*, 810 F.3d at 811, this defect in the pleading prevents the Court from concluding that mandamus jurisdiction exists.

### B. Administrative Procedure Act

In Count II, Mr. Pourrain asserts a claim under the APA. Here, too, the Court is uncertain as to its subject matter jurisdiction. While the APA provides a mechanism for federal courts to compel agency action when it is "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706, the APA itself is not an independent basis for subject matter jurisdiction and the statute "does not afford an implied grant of subject-matter jurisdiction permitting federal

judicial review of agency action." *See Califano v. Sanders*, 430 U.S. 99, 107 (1977). Moreover, the power to compel agency action under section 706(1) is limited to where a plaintiff "asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). In his response to this Order, Mr. Pourrain must identify, with respect to both defendants, (1) the discrete action the defendant was required to take, (2) the source of the defendant's duty to take the specified action, and (3) this Court's subject matter jurisdiction to adjudicate Count II if the Court finds that it lacks subject matter jurisdiction over Count I.

      **C.**     **Fifth Amendment Due Process Violation**

In Count III of his petition, Mr. Pourrain asserts entitlement to relief under the Due Process Clause of the Fifth Amendment to the United States Constitution. The Fifth Amendment provides that no person may be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Yet, within his petition Mr. Pourrain does not allege of what cognizable "life, liberty, or property" interest he has been deprived. While he alleges that an unspecified court held that a delay of over eight years was deemed "potentially unconstitutional," (doc. # 1 at 2-3), this allegation is insufficient for this Court to determine its jurisdiction as to Count III. Conclusory references to "constitutional interests" or to unidentified case law are inadequate. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27–28 (1983) (holding that federal question jurisdiction exists "only those cases in which a *well-pleaded complaint* establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law") (emphasis added).

### III. Conclusion

"The very structure of the articles delegating and separating powers under Articles I, II, and III [of the United States Constitution] exemplify the concept of separation of powers." *Immigration & Naturalization Service v. Chadha*, 462 U.S. 919, 946 (1983). Article I provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. Article II provides that "[t]he executive Power shall be vested in a President of the United States." U.S. Const. art. II, § 1, cl. 1. And Article III provides that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. The United States Supreme Court has recognized in various contexts that "[t]hese grants are exclusive." *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 67–68 (2015) (Thomas, J., concurring) (citing *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 472 (2001) (legislative power); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 496–97 (2010) (executive power); and *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (judicial power)). "When the Government is called upon to perform a function that requires an exercise of legislative, executive, or judicial power, only the vested recipient of that power can perform it." *Id.* at 68.

While Congress clearly conferred on this Court the power to issue a writ of mandamus, the Mandamus Act does not grant United States district courts license to do what the United States Constitution has never allowed. And the Constitution has never allowed one branch of the federal government to exercise the power that the people of the United States gave to another branch. Defendants USCIS and DHS are executive branch agencies that administer

9

a procedure established by Congress. If, in the text of the enactment, Congress granted the executive branch discretion in its administration of the law, then the Mandamus Act does not confer subject matter jurisdiction to a United States District Court to second-guess the exercise of that discretion.

To date, Mr. Pourrain has failed to satisfy the Court that it has jurisdiction to grant the relief requested in Count I. If the Court does not have subject matter jurisdiction over Count I, then the source of its jurisdiction over the remaining claims is similarly in doubt. If Mr. Pourrain fails to show cause why this case should not be dismissed for lack of subject matter jurisdiction, then it will be because it must be.

Accordingly, it is now

**ORDERED AND ADJUDGED** that:

1. On or before January 20, 2026, Mr. Pourrain must **SHOW CAUSE** why Counts I, II, and III should not be dismissed for lack of subject matter jurisdiction.
2. Failure to comply with this Order may result in dismissal of the case without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida, on January 6, 2026.

ANNE LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

Copies provided to:

Pro Se Parties